IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STONE SURGICAL, LLC; | ) | CIVIL ACTION NO.: |
| | ) | |
| Plaintiff, | ) | SECTION: |
| | ) | |
| v. | ) | DIVISION: |
| | ) | |
| STRYKER CORPORATION and HOWMEDICA | ) | |
| OSTEONICS CORP.; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Stone Surgical, LLC, plaintiff, avers as follows.

## NATURE OF THE ACTION

I.

This is a diversity action for (1) violation of the Louisiana Unfair Trade Practices Act,

La.R.S. 51:1405A and 1409A, (2) fraud under La. Civ. C. art. 1953, (3) unjust enrichment under

La. Civ. C. art. 2298 and (4) intentional interference with contractual or business relations.

## THE PARTIES

II.

Plaintiff is a Louisiana limited liability company domiciled in Jefferson Parish. Its sole

member is a citizen of the State of Louisiana.

III.

Made defendants are Stryker Corporation ("Stryker"), a Michigan corporation with its

principal place of business in Michigan, and Howmedica Osteonics Corp. ("Howmedica"),

a New Jersey corporation with its principal place of business in Michigan, licensed to do business in the state of Louisiana and having a registered agent in East Baton Rouge Parish.

IV.

Howmedica is a wholly owned subsidiary of Stryker.

V.

Stryker, through its agents and subsidiaries, delivers and sells its medical devices in Louisiana, generating substantial revenue, and its agents and representatives regularly are in Louisiana to transact Stryker's business. Stryker leases real estate in Jefferson Parish, Louisiana. Stryker has sufficient minimum contacts with Louisiana for this Court to exercise jurisdiction over it.

## JURISDICTION AND VENUE

VI.

Jurisdiction is proper pursuant to 28 U.S.C. § 1332, because the parties are completely diverse and the amount in dispute exceeds $75,000.

VII.

Venue is proper pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

VIII.

Stone Surgical, LLC is owned by Christopher Ridgeway, who is the manager of the company. It is operated from his home at 579 Woodvine Avenue, Metairie, Louisiana 70005.

IX.

Stone Surgical, LLC was formed in 2009 to engage in the sale of products in the medical field.

X.

Over the course of several years, Biomet Microfixation, LLC ("Biomet") had approached Christopher Ridgeway to enter a distributorship agreement with Biomet for the sale and distribution in Louisiana of its medical devices that are implanted into patients during surgery. One set of devices was craniomaxillofacial implants (implants in a person's skull to fix facial and cranial fractures and deformities) and another set of devices were spinal implants.

XI.

However, during this time Christopher Ridgeway was a salesman for Howmedica in Louisiana. He became a manager of sales for Howmedica in 2012.

XII.

Biomet is the archrival and great competitor of Howmedica in the field of spinal and skull implants that were being sold by Christopher Ridgeway for Howmedica.

XIII.

Christopher Ridgeway was the top salesman for Howmedica in his field, generating more revenue for Howmedica than any other salesman in his field.

XIV.

On September 10, 2013, Howmedica terminated Christopher Ridgeway's employment, after it discovered that Christopher Ridgeway had entered into serious discussions with Biomet about working for it in competition with Howmedica in Louisiana.

XV.

After Christopher Ridgeway was terminated by Howmedica on September 10, 2013, he negotiated on behalf of, and as agent for, Stone Surgical, LLC a distributorship agreement for

Stone Surgical, LLC to sell and distribute Biomet microfixation (skull) implants and a second agreement to sell and distribute spinal implants, throughout all Louisiana Parishes.

## XVI.

The first distributorship agreement between Stone Surgical, LLC and Biomet was signed on September 23, 2013, and there was no term for the expiration of the agreement. The first distributorship agreement could continue indefinitely, so long as neither party elected to terminate it. Under the first distributorship agreement, Stone Surgical, LLC (while being managed by Christopher Ridgeway), would sell Biomet medical devices, in competition with Howmedica throughout all Louisiana Parishes. The first distributorship agreement with Biomet required that Christopher Ridgeway be the individual who managed Stone Surgical, LLC.

## XVII.

In its solicitation of Christopher Ridgeway and Stone Surgical, LLC, Biomet submitted a compensation plan whereby Stone Surgical, LLC would receive an average of $1,750,000 per year under the first distributorship (for the sale of skull implants), consisting of fixed payments plus a commission based on sales. Under the second distributorship (for the sale of spinal implants), Stone Surgical, LLC would receive an average of $2,000,000 per year, consisting of fixed payments plus a commission based on sales. The second distributorship was promised to Stone Surgical, LLC by Biomet, and the parties were on the verge of signing a contract when Stryker and Howmedica struck.

## XVIII.

Christopher Ridgeway is 35 years old with a work life expectancy of another thirty years, so he would be able to continue to manage Stone Surgical, LLC, as required by the Biomet distributorship agreements, for at least thirty years.

XIX.

Upon discovering that Christopher Ridgeway had commenced working for Stone Surgical, LLC under a distributorship agreement with Biomet, Stryker and Howmedica immediately filed a lawsuit in Kalamazoo, Michigan against Christopher Ridgeway and Biomet, Inc. (the parent of Biomet Microfixation LLC) for alleged (1) breach of contract, (2) breach of fiduciary duty and (3) misappropriation of trade secrets. The action was filed on September 30, 2013 and is styled *Stryker Corporation and Howmedica Osteonics Corp. v. Christopher Ridgeway, et al.*, Case No. 1:13-cv-01066, in the United States District Court for the Western District of Michigan (the "Kalamazoo lawsuit"). Stryker and Howmedica have furnished notice that they plan to substitute Biomet Microfixation, LLC in place of Biomet, Inc. (hereinafter collectively "Biomet") as the proper named defendant.

XX.

In the Kalamazoo lawsuit, Stryker and Howmedica also filed a Motion for Temporary Restraining Order and Preliminary Injunction against Christopher Ridgeway "from engaging in or participating in any employment or activity competitive with Stryker on Biomet's behalf", on grounds that an alleged non-compete agreement (a copy of which is attached hereto as Exhibit 1) existed that prohibited Christopher Ridgeway from working for anyone in competition with Howmedica or Stryker. In support of their request for Preliminary Injunction, Stryker and Howmedica submitted a Declaration of Sarah Krupinski in which she stated, under penalty of perjury, that:

> On October 24, 2001, Christopher Ridgeway executed the Agreement that contains certain reasonable post-employment contractual obligations owing to Stryker. A true and correct copy of Ridgeway's Agreement is attached as Exhibit A.

## XXI.

In the Complaint, Stryker and Howmedica similarly sought preliminary and permanent injunction against Christopher Ridgeway and Biomet on grounds that a valid non-compete agreement existed and attached the same Exhibit A with the representation that "A true and correct copy of Ridgeway's Agreement is attached as Exhibit A."

## STRYKER'S DECEPTIVE ACTS

## XXII.

Christopher Ridgeway began employment in 2001 as a salesman for Howmedica Leibinger Corp. ("Leibinger"). His work was in Louisiana, including in Orleans and Jefferson Parishes. Leibinger was a subsidiary of Stryker in 2001, and subsequently merged into Stryker.

## XXIII.

Leibinger (or Stryker) destroyed any paperwork comprising the terms of any employment agreement with Christopher Ridgeway. Stryker did, however, preserve a faxed signature page from Christopher Ridgeway, but not the remainder of any agreement. The facsimile signature page is attached at page 9 of Exhibit 1.

## XXIV.

With only a signature page remaining, the terms of any agreement are unknown.

## XXV.

Howmedica and Stryker knew that they had no legal, binding or enforceable non-compete agreement with Christopher Ridgeway, and they admitted this to him on numerous occasions during twelve years of employment at Howmedica. Both his supervisors and the managers of the Human Resources Department confirmed to Christopher Ridgeway that he had no non-compete agreement.

XXVI.

On several occasions after starting employment at Howmedica, Christopher Ridgeway was asked to sign a non-compete agreement, but he always declined. The last attempt occurred in 2012, when Christopher Ridgeway was advised that he was entitled to receive approximately $15,000 of Stryker stock options and was advised to sign an agreement for the stock options. When Christopher Ridgeway read the full content of the agreement to acquire Stryker stock options, he learned that a non-compete covenant had been slipped into the agreement and he refused to sign it. The surreptitious attempt to obtain a non-compete agreement in 2012 is an admission by Stryker that it knew Christopher Ridgeway did not have a non-compete agreement.

XXVII.

Without any enforceable non-compete agreement, and desperate to stop Christopher Ridgeway from selling Biomet devices in competition with Howmedica, Howmedica and Stryker then engaged in an extraordinarily deceptive act to torpedo the new business relationship made between Biomet and Stone Surgical, LLC, and to unfairly destroy the prospect that they would compete against Howmedica.

XXVIII.

In a deceitful fabrication, Howmedica and Stryker took a copy of Christopher Ridgeway's facsimile signature page from an unknown agreement that Stryker had destroyed (and Leibinger had never signed), then attached Christopher Ridgeway's signature page to a non-compete agreement of another man, by whiting out or using Liquid Paper to obliterate the other man's name. This was done to hide the defendant's deceptive conduct. Howmedica and Stryker took the altered document, attached it to the Declaration of Sarah Krupinski (made under penalty of perjury) and also attached it to their Complaint, then made the representation in each that "a

true and correct copy of Ridgeway's agreement is attached as Exhibit A." A copy of the phony "Exhibit A," created by Stryker is attached hereto as Exhibit 1. This altered and fabricated document is nothing more than a cut and paste job.

XXIX.

From the face of this instrument, it is readily apparent that there are smudges and white out that obliterate the name of the person to whose agreement Christopher Ridgeway's signature page was attached. One can plainly see the broken lines under the blank spaces for the date that were caused by the white out. Moreover, one can readily see the visible hole punches for a three ring binder on the alleged non-compete agreement that was taken from another man's agreement. These hole punches on the first eight pages of the document stand in stark contrast to the facsimile signature page of the alleged agreement that bears Christopher Ridgeway's signature. By comparison, there are no three ring binder hole punches on Christopher Ridgeway's signature page.

XXX.

The first nine pages of the agreement also do not bear the facsimile legend at the top of each page as appears on the signature page of Christopher Ridgeway. Inexplicably, page 7 reflects none of the same three ring binder hole punches as the other pages, evidencing that it came from yet another document. In short, no valid non-compete agreement exists between Christopher Ridgeway and Howmedica, his employer.

XXXI.

Even if the Exhibit A were a true copy of a genuine agreement, it was invalid because the alleged terms of the faked non-compete agreement (the Exhibit A) were in plain violation of La.R.S. 23:921A(1). Moreover, the alleged terms contained a choice of forum clause and a

choice of law clause that both designated Michigan, in direct violation of La. R.S. 23:921A(2). Howmedica and Stryker knew that they had no valid non-compete agreement with Christopher Ridgeway, yet intentionally sought to destroy the business relationship that Stone Surgical, LLC had with Biomet.

## XXXII.

Stryker and Howmedica then served the fabricated, falsified and fraudulent document on Biomet, together with its Complaint and the Declaration of Sarah Krupinski, alleging that Christopher Ridgeway was in violation of the invalid and fake non-compete agreement and informing Biomet that it was being sued for arranging for Christopher Ridgeway to sell Biomet devices in competition against Howmedica.

## XXXIII.

Deceived by this fabricated, fraudulent non-compete agreement, Biomet terminated the September 23, 2013 agreement with Stone Surgical, LLC. The sole reason furnished by Biomet for the termination of Stone Surgical, LLC's agreement was that Biomet believed that the non-compete agreement attached to Howmedica's Complaint (and attached to the Declaration of Sarah Krupinski) was genuine. As a result, Biomet did not want to cause any breach of the alleged non-compete agreement for which it might be liable for damages. Biomet was misled and deceived by Howmedica and Stryker and would not otherwise have terminated the agreement. Attached as Exhibit 2 is the termination notice from Biomet to Stone Surgical, LLC.

## XXXIV.

Stone Surgical, LLC is not a party to the Kalamazoo lawsuit, and its claims against Howmedica and Stryker arise solely from the actions and conduct that are not a part of any cause of action or relief that are the subject of the Kalamazoo lawsuit. The acts and misconduct by

Howmedica and Stryker that give rise to this lawsuit occurred after the action and conduct that are at issue in the Kalamazoo lawsuit (filed on September 30, 2013). Also, the conduct and action that injured Stone Surgical, LLC occurred after the filing of the Kalamazoo lawsuit, so none of the matters that give rise to this action are at issue in the Kalamazoo lawsuit.

XXXV.

After Howmedica and Stryker were caught in their deceptive practices, and after the fabrication of the document was uncovered and disclosed, Howmedica and Stryker amended their Complaint in the Kalamazoo lawsuit to delete any reference to the fabricated non-compete agreement (the phony "Exhibit A") and they dropped their claim that the fabricated agreement designated as Exhibit A was the true document signed by Christopher Ridgeway. Additionally, Howmedica and Stryker withdrew their Motion for Preliminary Injunction that was based on the Declaration of Sarah Krupinski and that contained the faked Exhibit A. Accordingly, the fabricated non-compete agreement is no longer at issue in the Kalamazoo lawsuit, but the damage has already been done. Biomet has already terminated the contract with Stone Surgical, LLC.

**COUNT I.**
**LOUISIANA UNFAIR TRADE PRACTICES ACT**

XXXVI.

As set forth above, Howmedica and Stryker violated the Louisiana Unfair Trade Practices Act, La.R.S. 51:1405, because the fabrication of the non-compete agreement was a deceptive act designed to stop Stone Surgical, LLC from proceeding to compete against Howmedica through the sale of Biomet surgical devices (craniomaxillofacial implants) in Louisiana. Hospitals, doctors and patients have now been deprived of the choice to select the superior Biomet products that Stone Surgical, LLC planned to sell.

### XXXVII.

Howmedica and Stryker filed the Kalamazoo lawsuit with the knowledge that they had no valid non-compete agreement with Christopher Ridgeway, and they had a duty not to seek to enforce an invalid non-compete agreement.

### XXXVIII.

Under La.R.S. 51:1409, Stone Surgical, LLC has suffered the loss of revenue that it would have received under the agreement with Biomet.

### XXXIX.

Pursuant to La.R.S. 51:1409B, the plaintiff's attorney has mailed a copy of this Complaint to the Louisiana Attorney General.

### COUNT II.
### FRAUD

### XXXX.

As set forth above, Stryker and Howmedica committed fraud in violation of La. Civ. C. arts. 1953, et seq. by misrepresenting to Biomet that the Exhibit A filed with its Complaint, and filed with the Declaration of Sarah Krupinski, was a genuine and valid non-compete agreement that prohibited Christopher Ridgeway from working with Stone Surgical, LLC in competition with Howmedica, when Stryker and Howmedica knew that the alleged non-compete agreement was invalid and a fake. Stryker and Howmedica's conduct resulted in an unjust advantage for it by eliminating Stone Surgical, LLC as a competitor in the surgical device market, and causing Stone Surgical, LLC the loss of income that it was to earn under its contract with Biomet.

## COUNT III.
## UNJUST ENRICHMENT

### XXXXI.

In the alternative, and in the event that Stone Surgical, LLC has no other remedy, it is entitled to recover damages against Howmedica and Stryker for unjust enrichment under La. Civ. C. art. 2298, based on the actions and conduct of defendants as set forth above.

### XXXXII.

By implementing its deceptive plan utilizing its fraudulent document, Stryker and Howmedica have been enriched by all of the sales of medical devices that it is now able to make that otherwise would be lost by customers selecting to purchase Biomet medical devices in place of the Howmedica medical devices. Stryker and Howmedica have been enriched by the sales that it would not otherwise have achieved, and Stone Surgical, LLC has been impoverished by its commissions lost from sales that it would have made by selling Biomet medical devices.

## COUNT IV.
## TORTIOUS INTERFERENCE WITH A CONTRACT
## (UNDER LOUISIANA LAW)

### XXXXIII.

The actions and conduct of Howmedica and Stryker, as set forth above, constituted tortious interference with a contract under Louisiana law for which the defendants are liable in damages to Stone Surgical, LLC.

## COUNT V.
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
## (UNDER MICHIGAN LAW)

### XXXXIV.

In the further alternative, because Howmedica and Stryker where both entities have their headquarters in Michigan, Michigan law may apply, and if so, then Stone Surgical, LLC may

recover damages for tortious interference with a business relationship and tortious interference with a contract.

## XXXXV.

Stone Surgical, LLC had a valid business relationship and expectancy of a continuing business relationship, but the intentional interference by Howmedica and Stryker induced or caused the termination of the relationship, with Stone Surgical, LLC being damaged.

## ATTORNEY'S FEES.

## XXXXVI.

Stone Surgical, LLC has incurred attorney's fees that it is entitled to recover under the Louisiana Unfair Trade Practices Act.

## SOLIDARY LIABILITY

## XXXXVII.

Howmedica and Stryker are liable, in solido, to Stone Surgical, LLC.

## JURY DEMAND

## XXXXVIII.

Stone Surgical, LLC requests a trial by jury on all claims.

**WHEREFORE**, plaintiff, Stone Surgical, LLC, prays for judgment in its favor against the defendants, Stryker Corporation and Howmedica Osteonics Corp., in solido, for all damages, interest, costs and attorney's fees, and all other relief to which it may be entitled.

RESPECTFULLY SUBMITTED:

*/s/ Wade P. Webster*
GEORGE J. FOWLER III, T.A. (LA Bar No. 5798)
WADE P. WEBSTER (LA Bar. No. 1639)
ROBERT R. JOHNSTON (LA Bar No. 22332)
FOWLER RODRIGUEZ FLINT GRAY
MCCOY & SULLIVAN, L.L.P.
400 Poydras Street 30th Floor
New Orleans, Louisiana 70130
Phone: (504) 523-2600
Facsimile: (504) 523-2705
Email: fow@frfirm.com
Email: wwebster@frfirm.com
Email: johnston@frfirm.com
*Attorneys for Stone Surgical, LLC*